UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

---

MATTHEW D.,

Plaintiff,

v.

CASE NO. 1:25-cv-00167 (JGW)

COMMISSIONER OF SOCIAL SECURITY,

Defendant.

---

J. Gregory Wehrman, U.S. Magistrate Judge,

**MEMORANDUM-DECISION and ORDER**

The parties consented in accordance with a standing order to proceed before the undersigned. The Court has jurisdiction over this matter pursuant to 42 U.S.C. § 405(g). The matter is presently before the Court on the parties' cross-motions for judgment on the pleadings pursuant to Rule 12(c) of the Federal Rules of Civil Procedure, (Docs. 6, 11), along with Plaintiff's response brief, (Doc. 13). Upon review of the administrative record and consideration of the parties' filings, Plaintiff's Motion for Judgment on Pleadings (Doc. 6) is **GRANTED**, Defendant's Motion for Judgment on the Pleadings (Doc. 11) is **DENIED**, and the decision of the Commissioner is **REMANDED**.

## I. RELEVANT BACKGROUND

### A. Procedural Background

On October 29, 2018, Plaintiff protectively filed an application for a period of disability and disability insurance benefits, alleging an onset date of December 8, 2016. (Tr. 112, 267-68.) Plaintiff's claim was denied initially and on reconsideration. (Tr. 125,

142.) He then timely requested a hearing before an Administrative Law Judge (ALJ). (Tr. 171-72.) Plaintiff appeared with counsel for a telephonic hearing before ALJ Barbara Dunn held on August 18, 2020. (Tr. 72-110.) On December 7, 2020, the ALJ held a supplemental hearing and received testimony from Plaintiff, a vocational expert, and a medical expert. (Tr. 40-71.) On March 16, 2021, the ALJ issued an unfavorable decision, finding that Plaintiff was not disabled. (Tr. 16-39.) The Appeals Council denied his request for review, (Tr. 1-6), and Plaintiff timely filed his appeal to the District Court in the Western District of New York.

The district court remanded the matter for further proceedings, finding that the vocational expert did not discuss the distinction between reaching overhead and reaching in other directions with respect to specific jobs identified by that vocational expert. (Tr. 1207; 1231-32; 1318.) On remand, the matter was assigned to a different ALJ, and ALJ Mark Solomon held another telephonic hearing on October 8, 2024. (Tr. 1228-53.) Thereafter, on November 25, 2024, the ALJ issued another unfavorable decision, finding Plaintiff was not disabled. (Tr. 1207-27.) Plaintiff timely appealed to this Court.

### B. Factual Background[1]

Plaintiff was born March 28, 1966 and advanced through college. (Tr. 111, 315.) He alleged his disabling conditions to include left shoulder problems, right shoulder problems, back problems, bipolar disorder, obsessive compulsive disorder, and gout. (Tr. 112.)

Plaintiff testified to limitations he experienced due to his impairments, describing that he experienced pain all the time. (Tr. 1233.) He indicated that he could not drive

[1] This recitation of facts primarily includes testimony from the hearing before the ALJ. Other facts will be developed throughout the opinion as relevant to the Court's analysis.

longer than an hour because he would experience sharp pain in his back, with pain going down his legs and along his beltline. (Tr. 1232-33.) He continued to have nerve pain in his legs, although it was temporarily relieved through surgery. (Tr. 1234-35.) He described he could stand for only ten minutes in one place, but he could walk to his mailbox and back, which he estimated to be one-tenth of a mile. (Tr. 1235.) After standing for more than ten minutes, he indicated he must lay down on his stomach, which he described to be the only thing that provided him relief. (*Id.*) He also identified pain from sitting, specifically nerve pain flowing to his legs. (Tr. 1236.) This, too, would result in him needing to lay on his stomach. (*Id.*) In fact, laying on his stomach was the primary way he lessened his pain, and he described doing this about a dozen times a day. (*Id.*) When asked how long he would need to lie down during these periods, he responded: "I don't know, sometimes they were longer than others because I just want to stay there. But if I'm forced or I'm unable to stay there, ten minutes." (Tr. 1237.)

He also described difficulty using his left shoulder, as well as his right shoulder. (Tr. 1233, 1234.) Prior to 2020, he had no use of the right shoulder or right arm, including to lift or reach. (Tr. 1237.) He was also limited in using his left arm due to tears. (*Id.*) This affected the way he would take a drink, for example, as well as how he could reach forward. (*Id.*) He indicated he could lift maybe five pounds, or even less due to his shoulder issues. (Tr. 1236.)

He struggled with depression and could not take care of personal tasks such as dressing himself. (Tr. 1233.) He has difficulty with aggressive and physical behavior. (Tr. 1240.) He also struggled with bipolar, particularly the manic episodes that often

manifested through anger, excessive shopping, or lack of sleep. (Tr. 1240-41.) During the depressive periods he described mostly staying in bed. (Tr. 1241.)

The ALJ examined vocational expert (VE) Debra Horton, and asked her to consider a hypothetical individual with the following exertional and non-exertional limitations:

> assume I find he can perform a range of light work with the ability to sit for six hours, stand and walk for a total of six hours, lift and carry up to 20 pounds occasionally and 10 pounds frequently, should never climb ladders, ropes or scaffolds. He can occasionally climb ramps and stairs. He can occasionally balance, stoop, kneel, crouch, and crawl, can frequently reach overhead with the left upper extremity and occasionally reach overhead with the right upper extremity. He must avoid working at unprotected heights or with hazardous machinery. He requires the ability to change positions for one minute every 30 minutes. He can work in a moderately noisy environment. He can remember, understand, and carry out simple instructions, use judgment to make simple, work-related decisions, and adapt to routine and occasional changes in the workplace. He can perform a job not requiring a specific production rate or that requires hourly quotas, can have frequent contact with supervisors and coworkers and none with the general public.

(Tr. 1247.)

The VE identified the job of marker but reduced the total numbers by twenty percent in light of the ALJ's limitation of no contact with the public. (*Id.*) She also identified mail clerk, again reducing the total jobs by twenty percent to account for the no contact limitation. (*Id.*)

The ALJ next asked the VE whether the Dictionary of Occupational Titles (DOT) distinguished between overhead reaching and reaching in other directions, which she confirmed it did not. (*Id.*) He then asked:

> Q. Okay. So, it's your opinion that those jobs can be performed with only occasional overhead reaching based upon your education, experience, training, and observation of such jobs?
>
> A. Yes, sir. And then the use of each arm at a different frequency.

(Tr. 1248.)

The ALJ also asked the VE about whether the DOT addressed frequency of interaction and the sit/stand option. With regard to the sit/stand option, the ALJ asked:

> Q. Okay. And with respect to the sit/stand option, having to change positions for one minute, that's also not in the DOT. Is that correct?
>
> A. That's correct.
>
> Q. Okay. That's also based upon your education, experience and training.
>
> A. Yes, it is.

(Tr. 1249.)

The ALJ also asked the VE about off-task time:

> Q. In your opinion, based upon your education, experience and training, how much time can an individual be off task outside of regularly scheduled breaks before they would be deemed unable to work?
>
> A. Less than 10 percent, so 9 percent or less.

(*Id.*)

### C. Opinion Evidence Regarding Plaintiff's Physical Limitations.[2]

Three experts opined as to Plaintiff's physical impairments. Agency reviewer Dr. Miller evaluated Plaintiff's file on or about June 19, 2019. (Tr. 111-24.) Dr. Miller's opinion was consistent with a light exertional level, with right overhead reaching limited to occasional. (Tr. 120-22.) Dr. Ehlert's conclusions were consistent on reconsideration. (Tr. 137-39.)

[2] Because Plaintiff does not challenge the portion of the RFC addressing his mental limitations, the Court focuses this opinion on the ALJ's RFC of his physical impairments.

Consultative examining physician Dr. Hong Biao Liu opined that Plaintiff had "mild-to-moderate limitation for prolonged walking, bending, kneeling, squatting, lifting, overhead reaching, carry heavy weight, prolonged sitting, or standing." (Tr. 769.)

**D. ALJ's Decision**

Generally, in his decision, the ALJ made the following findings of fact and conclusions of law.

1. The claimant last met the insured status requirements of the Social Security Act on December 31, 2019. (Tr. 1209.)

2. The claimant did not engage in substantial gainful activity during the period from his alleged onset date of December 8, 2016 through his date last insured of December 31, 2019 (20 CFR 404.1571 *t est q*.). (Tr. 1210.)

3. Through the date last insured, the claimant had the following severe impairments: lumbar radiculopathy; status post lumbar fusion; bilateral shoulder osteoarthritis and arthralgia; obstructive sleep apnea; bipolar disorder; depression; anxiety; and obsessive compulsive disorder (20 CFR 404.1520(c)). (Tr. 1210.)

4. Through the date last insured, the claimant did not have an impairment or combination of impairments that met or medically equaled the severity of one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1 (20 CFR 404.1520(d), 404.1525 and 404.1526). (Tr. 1210.)

5. After careful consideration of the entire record, I find that, through the date last insured, the claimant had the residual functional capacity to perform light work as defined in 20 CFR 404.1567(b) except sit six hours, stand/walk total six hours, lift/carry 20 pounds occasionally and 10 pounds frequently; no climbing ladders/ropes/scaffolds, can occasionally climb ramps and stairs, occasionally balance, stoop, kneel, crouch and crawl; can frequently reach overhead with the left upper extremity, and can occasionally reach overhead with the right upper extremity, must avoid working at unprotected height or with hazardous machinery. He requires the ability to change positions for one minute every 30 minutes. He can work in a moderately noisy environment. He can remember, understand and carry out simple instructions, use judgment to make simple work-related decisions, adapt to routine and occasional changes in the workplace; can perform a job not requiring a specific production rate or work that requires hourly quotas; can have frequent contact with supervisors and coworkers, and none with the general public. (Tr. 1212-13.)

6. The claimant has no past relevant work (20 CFR 404.1565). (Tr. 1218.)

7. The claimant was born on March 28, 1966 and was 53 years old, which is defined as an individual closely approaching advanced age, on the date last insured (20 CFR 404.1563). (Tr. 1218.)

8. The claimant has at least a high school education (20 CFR 404.1564). (Tr. 1218.)

9. Transferability of job skills is not an issue because the claimant does not have past relevant work (20 CFR 404.1568). (Tr. 1218.)

10. Through the date last insured, considering the claimant's age, education, work experience, and residual functional capacity, there were jobs that existed in significant numbers in the national economy that the claimant could have performed (20 CFR 404.1569 and 404.1569a). (Tr. 1218.)

## II. LEGAL STANDARD

### A. Standard of Review

"In reviewing a final decision of the SSA, this Court is limited to determining whether the SSA's conclusions were supported by substantial evidence in the record and were based on a correct legal standard." *Talavera v. Astrue*, 697 F.3d 145, 151 (2d Cir. 2012). Substantial evidence is defined as "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Moran v. Astrue*, 569 F.3d 496, 501 (2d Cir. 2009). "To determine on appeal whether the ALJ's findings are supported by substantial evidence, a reviewing court considers the whole record, examining evidence from both sides, because an analysis of the substantiality of the evidence must also include that which detracts from its weight." *Williams v. Bowen*, 859 F.2d 255, 258 (2d Cir. 1988). If the evidence is susceptible to more than one rational interpretation, the Commissioner's determination must be upheld. *McIntyre v. Colvin*, 758 F.3d 146, 149 (2d Cir. 2014). "Where an administrative decision rests on adequate findings sustained by evidence having rational probative force, the court should not substitute its judgment for that of the Commissioner." *Yancey v. Apfel*, 145 F.3d 106, 111 (2d Cir. 1998).

**B. Standard to Determine Disability**

To be disabled under the Social Security Act (Act), a claimant must establish an inability to do any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death, or which has lasted or can be expected to last for a continuous period of not less than twelve months. 20 C.F.R. § 416.905(a). The Commissioner must follow a five-step sequential evaluation to determine whether a claimant is disabled within the meaning of the Act. 20 C.F.R. § 416.920(a).

At step one, the claimant must demonstrate that he is not engaging in substantial gainful activity. 20 C.F.R. § 416.920(b). At step two, the claimant must demonstrate that he has a severe impairment or combination of impairments that limits the claimant's ability to perform physical or mental work-related activities. 20 C.F.R. § 416.920(c). If the impairment meets or medically equals the criteria of a disabling impairment as set forth in Appendix 1 of Subpart P of Regulation No. 4 (the "Listings"), and satisfies the durational requirement, the claimant is entitled to disability benefits. 20 C.F.R. § 416.920(d). If the impairment does not meet the criteria of a disabling impairment, the Commissioner considers whether the claimant has sufficient residual functional capacity (RFC) for the claimant to return to past relevant work. 20 C.F.R. § 416.920(e)-(f). If the claimant is unable to return to past relevant work, the burden of proof shifts to the Commissioner to demonstrate that the claimant could perform other jobs which exist in significant numbers in the national economy, based on claimant's age, education, and work experience. 20 C.F.R. § 416.920(g).

## III. ANALYSIS

Plaintiff argues the ALJ erred in two ways, mandating remand. First, he contends that the ALJ failed to reconcile an inconsistency between the VE testimony and the DOT regarding overhead reaching. (Doc. 6-1 at 18-21.) Second, he asserts that the ALJ failed to tether two limitations contained within the RFC to evidence of record. (*See id.* at 21-26.) Specifically, Plaintiff maintains that the ALJ's limitations regarding overhead reaching are not supported by substantial evidence because there is no evidence supporting a greater limitation on Plaintiff's right upper extremity versus his left upper extremity. (*See id.* at 22.) He also argues that the ALJ failed to explain the basis for his finding that a one-minute change in position every thirty minutes would address Plaintiff's pain and other symptoms and that this limitation is not supported by substantial evidence. (*See id.* at 23.)

For the reasons set forth below, the Court agrees that the ALJ's limitation regarding time associated with position changes is not supported by substantial evidence and, therefore, finds remand to be appropriate.

A claimant's RFC is the most he can still do despite his limitations and is based on all relevant evidence in the record. *See* 20 C.F.R. §§ 404.1520(e), 404.945(a)(1), (a)(3); SSR 96-8p, 61 Fed. Reg. 34,474-01 (July 2, 1996). The regulations explicitly provide that the RFC is an administrative finding reserved to the Commissioner and not a medical finding. 20 C.F.R. § 404.1527(d); *Schillo v. Kijakazi*, 31 F.4th 64, 78 (2d Cir. 2022) (recognizing that "the ALJ bears 'the final responsibility' for making RFC determinations"); *see also Desirae D. v. Comm'r of Soc. Sec.*, 20-cv-00054-JGW, 2021 WL 2042576, at *3 (W.D.N.Y. May 21, 2021). As such, the RFC conclusion "need not perfectly match any

single medical opinion in the record, so long as it is supported by substantial evidence." *Schillo*, 31 F.4th at 78. Indeed, an ALJ is permitted to "weigh all of the evidence available to make an RFC finding that [is] consistent with the record as a whole." *Matta v. Astrue*, 508 F. App'x 53, 56 (2d Cir. 2013).

To that end, "[a]n ALJ need not reconcile every conflict in the record but must set forth the crucial factors in his determination with sufficient specificity to enable a reviewing court to decide whether the determination is supported by substantial evidence." *Rebecca B. v. Comm'r of Soc. Sec.*, 22-cv-00631-HKS, 2025 WL 90625, at *4 (W.D.N.Y. Jan. 14, 2025) (citing *Estrella v. Berryhill*, 925 F.3d 90, 95 (2d Cir. 2019)). Indeed, an ALJ must "conduct a distinct analysis that would permit adequate review on appeal." *Heckman v. Comm'r of Soc. Sec.*, No. 18-cv-6032, 2019 WL 1492868, at * 3 (W.D.N.Y. April 4, 2019) (quoting *Aung Winn v. Colvin*, 541 F. App'x 67, 70 (2d Cir. 2013)). And "[w]hen the ALJ does 'not connect the record evidence and RFC findings' or otherwise 'explain how the record evidence supported his RFC findings,' the decision leaves the court 'with many unanswered questions and does not afford an adequate basis for meaningful judicial review.'" *Id.* (quoting *Gorny v. Comm'r of Soc. Sec.*, No. 18-cv-06-FPG, 2018 WL 5489573, at *4 (W.D.N.Y. Oct. 29, 2018)).

To be sure, "an RFC determination is not necessarily flawed simply because it contains highly specific limitations that are not formulated directly from a medical opinion." *Danielle L. v. Comm'r of Soc. Sec.*, No. 1:23-cv-809-EAW, 2025 WL 879974, at *3 (W.D.N.Y. Mar. 21, 2025) (citing *Tiffany L. v. Comm'r of Soc. Sec.*, No. 1:20-cv-0677 (WBC), 2021 WL 3145694, at *4 (W.D.N.Y. July 26, 2021)). But "[a] very specific RFC assessment—such as the specific amount of time a claimant can spend on certain

activities—must be based on evidence in the record, not on 'the ALJ's own surmise.'" *Heckman*, 2019 WL 1492868, at * 3 (quoting *Cosnyka v. Colvin*, 576 F. App'x 43, 46 (2d Cir. 2014)). Stated another way, "the ALJ cannot arrive at specific limitations that do not appear anywhere in that evidence." *Chapman v. Saul*, 19-cv-433F, 2020 WL 5668977, at *5 (W.D.N.Y. Sept. 24, 2020) (citing *Heckman*, 2019 WL 1492868, at *4). "So when the record provides no support for the specific amount of time that a claimant can sit or stand without relief, a specific finding towards that end is not supported by substantial evidence." *Heckman*, 2019 WL 1492868, at * 3.

Generally, courts recognize that "[w]ithout 'some explanation' from the ALJ 'as to the tether between [the] RFC and the non-stale medical opinions or statements from [the claimant], the RFC [is] based upon [the ALJ's] lay analysis of [the claimant's] limitations, which is not permitted and requires remand.'" *See Martia P. v. Comm'r of Soc. Sec.*, 1:20-cv-560-DB, 2021 WL 2349397, at *4 (W.D.N.Y. June 9, 2021) (quoting *Jordan v. Berryhill*, 2018 WL 5993366, at *3 (W.D.N.Y. Nov. 15, 2013)). *See also Jacqueline R. v. Comm'r of Soc. Sec.*, No. 1:21-cv-97-EAW, 2023 WL 4360557, at *5 (W.D.N.Y. July 6, 2023) (remanding, noting that the ALJ "did not undertake any attempt to link the evidence of Plaintiff's symptoms into Plaintiff's specific off-task finding"); *William H. v. Comm'r of Soc. Sec.*, No. 20-cv-6050MWP, 2021 WL 2980339, at *5 (W.D.N.Y. July 15, 2021) (finding an RFC that permitted the plaintiff to change positions every hour for up to five minutes was not supported by substantial evidence when "the ALJ did not adequately explain why she assessed the specific and *less* restrictive sit/stand option that she did, despite affording 'weight' to that aspect of Dr. Lurie's opinion, and it is not clear what evidence in the record, if any, supports the ALJ's determination."); *Chapman*, 2020 WL

5668977, at *5 (finding that the ALJ's RFC that the plaintiff would need to sit for two minutes after standing or walking for thirty minutes and stand for two minutes after sitting for thirty minutes was not sufficiently supported by substantial evidence when "nowhere in the record is there any evidence" reflecting these limitations and, in fact, the findings conflicted with the medical evidence in the record); *Cheek v. Comm'r of Soc. Sec.*, No. 1:18-cv-01455EAW, 2020 WL 2028258, at *4 (W.D.N.Y. April 28, 2020) (finding that the ALJ erred in assigning a highly specific sit/stand option when no opinion evidence assigned a sit/stand option, the opinion evidence only identified that the plaintiff had "moderate limitations for walking and standing," and the sit/stand option contradicted the plaintiff's hearing testimony regarding the length of time she could sit)

Here, the ALJ found that Plaintiff "requires the ability to change positions for one minute every 30 minutes." (Tr. 1213.) But he never explained his rationale for imposing a sit/stand option, how he identified thirty minutes to be the appropriate time period, or how he concluded that one minute every thirty minutes was required for the positional change. Indeed, the only reference to the positional change and the time associated with it, other than including the limitation in the RFC, was in his analysis of whether jobs would be available for Plaintiff to perform in light of the RFC. (*See* Tr. 1219.) Specifically, the ALJ noted the VE testified that, "based upon her education, experience and training that [Plaintiff] could perform jobs if not off task more than 9 percent of the time in addition to regular scheduled breaks." (*See id.*) He then found that Plaintiff "would not be off task more than 9 percent of the time if he needed to change positions for one minute every thirty minutes, as that would be less [than] 9 percent off task every hour." (*Id.*) Thus, the

ALJ does not identify any evidence on which he bases his conclusion regarding the one-minute positional change or otherwise explain his rationale in reaching this conclusion.

Further, none of the experts opined to a specific off-task time—or any positional changes at all. While consultative examining expert Dr. Hong Biao Liu's report identifies Plaintiff's "Chief Complaint" to include that he needs to "change position every 45 minutes while seated or standing," Dr. Liu's medical source statement did not include a sit/stand option, but rather concluded that, in his opinion, Plaintiff "has mild-to-moderate limitation for prolonged walking, bending, kneeling, squatting, lifting, overhead reaching, carry heavy weight, prolonged sitting, or standing." (Tr. 766, 769.) And neither agency reviewer opined to a sit/stand or off-task limitation. (*See* Tr. 111-24; 126-41.)

In fact, the only reference to the need to change positions or the time needed for the positional changes comes from Plaintiff himself. During the hearing before ALJ Solomon, he testified that after standing for more than ten minutes, he must lay down on his stomach, which he described to be the only thing that provided him relief. (Tr. 1235.) He also identified pain from sitting, specifically nerve pain flowing to his legs, which would also require that he lay on his stomach. (Tr. 1236.) When asked how long he would need to lie down during these periods, he testified to a minimum of ten minutes. (*See* Tr. 1237) ("I don't know, sometimes they were longer than others because I just want to stay there. But if I'm forced or I'm unable to stay there, ten minutes.").

It is well-settled that it is not error for an ALJ to credit Plaintiff's testimony in implementing an off-task limitation. *See Talish M. v. Comm'r of Soc. Sec.*, No. 1:24-cv-00648-MAV, 2025 WL 2753158, at *4 (W.D.N.Y. Sept. 26, 2025) (recognizing that an ALJ's "decision to extend the benefit of the doubt to a claimant and to include additional

limitations in an RFC to account for self-reported symptoms is not generally a reversible error"). However, the limitation must still be supported by substantial evidence. *See Elder v. Comm'r of Soc. Sec.*, No. 18-cv-1196, 2019 WL 6320355, at *5 (W.D.N.Y. Nov. 16, 2019). ("Without 'some explanation' from the ALJ 'as to the tether between [the] RFC and the non-stale medical opinions or statements from [the claimant], the RFC [is] based upon [the ALJ's] lay analysis of [the claimant's] limitations, which is not permitted and requires remand'").

Here, however, the ALJ assigned a limitation that was less restrictive than Plaintiff's testimony, and there was no other evidence in the record to support this alternative conclusion. *See Kenneth H. v. Comm'r of Soc. Sec.*, 23-cv-6458-LJV, 2024 WL 5075613, at *5 (W.D.N.Y. Dec. 11, 2024) (recognizing "when the record provides no support for the specific amount of time that a claimant will be off task, a specific finding toward that end is not supported by substantial evidence."); *Cheek*, 2020 WL 2028258, at *4 (finding that the ALJ erred in assigning a highly specific sit/stand option when no opinion evidence assigned a sit/stand option, the opinion evidence only identified that the plaintiff had "moderate limitations for walking and standing," and the sit/stand option contradicted the plaintiff's hearing testimony regarding the length of time she could sit). While an ALJ may properly reject certain of Plaintiff's testimony based on his credibility assessment of Plaintiff, he cannot create an alternative conclusion out of whole cloth, especially without explanation of his evaluation of the evidence to support his conclusion. *See Chapman*, 2020 WL 5668977, at *5 (finding that the ALJ's RFC that the plaintiff would need to sit for two minutes after standing or walking for thirty minutes and stand for two minutes after sitting for thirty minutes was not sufficiently supported by substantial

evidence when "nowhere in the record is there any evidence" reflecting these limitations and, in fact, the findings conflicted with the medical evidence in the record).

Further, it is concerning that the ALJ settled on one-minute per position change, for a total of two minutes per hour, given the VE's testimony that an employer would only tolerate nine percent or less of off-task time. (*See* Tr. 1249.) Thus, the limitation appears to be, "[a]t best, . . . from whole cloth" and "[a]t worst, [it] responds to the vocational expert's testimony" that more off-task time would result in the conclusion that Plaintiff could not perform the work that the RFC found he could. *See Elder*, 2019 WL 6320355, at *6.

The ALJ's failure to tether this limitation to any evidence in the record renders the finding unsupported by substantial evidence. *See Kenneth H.*, 2024 WL 5075613, at *5 (finding the ALJ's limitation that the claimant required the option for an hourly five-minute position change to be unsupported by substantial evidence when the ALJ did not explain the basis for the limitation nor was there any record evidence supporting the frequency of the positional change nor the amount of time needed to make the positional change); *Tomicki v. Berryhill*, No. 15-cv-847-RJA-MJR, 2018 WL 703118, at *5 (W.D.N.Y. Jan. 11, 2018) (finding the ALJ's restriction that the claimant must be able to change positions briefly (1-2 minutes) at least every half-hour was not supported by substantial evidence when the ALJ did not explain how he reached the restriction and evidence in the record suggested claimant needed to change positions more frequently). The Court simply cannot conduct meaningful judicial review, and so this matter must be remanded.

## IV. CONCLUSION

For the above reasons, remand is warranted.

**ACCORDINGLY**, it is:

**ORDERED** that Plaintiff's Motion for Judgment on the Pleadings (Doc. 6) is **GRANTED;** and it is further

**ORDERED** that Defendant's Motion for Judgment on the Pleadings (Doc. 11) is **DENIED**; and it is further

**ORDERED** that this matter is **REMANDED**, pursuant to 42 U.S.C. § 405(g), for further proceedings consistent with this Decision and Order.

Dated: August 28, 2026
Rochester, New York

J. Gregory Wehrman J.G.W.
HON. J. Gregory Wehrman
United States Magistrate Judge